UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 22-22** |
| v. | * | **SECTION: "H"(3)** |
| **FLORENCE RANDLE**<br>  a/k/a "Florence Diggs"<br>  a/k/a "Florence Wheaten"<br>  a/k/a "Florence Sims"<br>  a/k/a "Wankie"<br>  a/k/a "Winkie" | *<br><br>*<br><br>* | |

\* \* \*

## FACTUAL BASIS

Should this matter have gone to trial, the Government would have proved through the introduction of reliable testimony and admissible tangible exhibits, including documentary evidence, the following to support the allegations charged by the Government in Count 1 of the Indictment now pending against the defendant, **FLORENCE RANDLE** ("**F. RANDLE**"), charging her with a violation of Title 18, United States Code, Section 371, namely, conspiracy to commit mail fraud. The Defendant, along with her co-conspirators and others, beginning at a time unknown and continuing through the present, in the Eastern District of Louisiana, and elsewhere, conspired to commit mail fraud in connection with staged automobile accidents, including two collisions on or about May 17, 2017 and one collision on June 6, 2017.

If this case had proceeded to trial, the Government would present testimony that, in or around the spring of 2017, **F. RANDLE,** her daughter, Stacie Wheaten ("S. Wheaten"), Damian Labeaud ("Labeaud"), and others met personal injury attorney Danny Patrick Keating, Jr. ("Keating") at a restaurant in New Orleans. Keating agreed to pay Labeaud $1,000.00 per passenger for accidents with tractor-trailers and $500.00 per passenger for accidents that did not involve tractor-

1

trailers. After the meeting, Labeaud began staging motor vehicle accidents for Keating in exchange for money. Evidence would show that S. Wheaten and **F. RANDLE** recruited passengers to participate in some of these staged automobile accidents, provided instructions to passengers, and coordinated with Keating and Labeaud. The Government would introduce testimonial evidence and phone records that Keating and **F. RANDLE** sometimes discussed the staging of accidents before they happened. For example, at approximately 11:04 A.M. on April 27, 2017, **F. RANDLE** texted Keating, "I might have 4 client for you to day." The Government would show that, approximately two hours and forty-five minutes later, four of **F. RANDLE's** family members got into a staged collision with a tractor-trailer in New Orleans. The Government would introduce evidence that **F. RANDLE** and Keating sometimes used coded language, referring to passengers as "salads" or "diet pills."

## The May 17, 2017 Staged Accidents

Witnesses would testify that, on or about April 16, 2017, **F. RANDLE** asked Troy Smith ("Smith") and Marvel Francois ("Francois") if they were interested in participating in a staged automobile accident in New Orleans, Louisiana, the next day, and they agreed. Witnesses would testify that Smith recruited Bernell Gale ("Gale") and Smith's family member, Passenger A[1] to be in the staged accident. The Government would present text messages showing that, on or about May 16, 2017, S. Wheaten asked Labeaud to help stage two automobile accidents the next day.

Witnesses would testify that, the morning of May 17, 2017, **F. RANDLE** instructed her husband Henry Randle ("H. Randle"), her son Ryan Wheaten ("R. Wheaten"), and her relative Dakota Diggs ("D. Diggs"), to travel together from Gibson, Louisiana, to a parking lot in New

---

[1] The Government would introduce evidence that Passenger A died in an unrelated auto accident on or about July 22, 2018.

2

Orleans, Louisiana, in a 2004 Ford F-150 ("Ford F-150"). Smith, Gale, Francois, and Passenger A also traveled from the area of Houma/Gibson, Louisiana, to the same parking lot that morning, in New Orleans, Louisiana, in a blue 2007 Dodge Durango ("Durango"). Labeaud and Mario Solomon ("Solomon") went to the same parking lot. It was agreed that Labeaud would first drive the Ford F-150 with passengers H. Randle, R. Wheaten, and D. Diggs and stage a car accident with a tractor-trailer and then Labeaud would drive the Durango with passengers Smith, Gale, Francois, and Passenger A, and stage a second car accident with another tractor-trailer.

Evidence would show that, at approximately 1:28 P.M., Labeaud, while driving the Ford F-150 on Calliope Street, intentionally sped up and collided with a 2006 Freightliner tractor-trailer operated by Stevie B's Trucking. Labeaud fled the scene. H. Randle falsely reported to NOPD that he was the driver of the F-150, and that the tractor-trailer had struck the F-150. Witnesses would testify that, after the F-150 collision, S. Wheaten and **F. RANDLE** directed H. Randle, R. Wheaten, and D. Diggs to go to Keating's office to hire him to file a false lawsuit in connection with the staged accident.

Meanwhile, after observing the Ford F-150 accident, Smith, Gale, Francois, and Passenger A agreed to allow Labeaud to drive the Durango. Just before 2:00 P.M., while driving in New Orleans East, Labeaud intentionally collided with a 2017 Peterbilt tractor-trailer operated by Tennessee Commercial Warehouse, Inc. ("TCW"). Labeaud fled the scene after the collision. Francois falsely reported that she had been driving the Durango at the time of the collision and that the tractor-trailer had struck her vehicle. Smith, Gale, Francois, and Passenger A then retained Keating to represent them in their false claims regarding the Durango collision. The Government would introduce text messages showing that, at approximately 8:42 P.M., Keating texted S. Wheaten and **F. RANDLE**, "Thank y'all for everything."

The passengers in both May 17th collisions filed false lawsuits. H. Randle, R. Wheaten, and D. Diggs filed personal injury lawsuits seeking monetary damages from Stevie B's Trucking, its insurer, National Union Fire Insurance Company of Pittsburgh, PA ("NUFIC"), and Truck Driver B in connection with the collision involving the Ford F-150. Smith, Gale, Francois, and Passenger A filed personal injury lawsuits seeking monetary damages from TCW, its insurer, Zurich American Insurance Company ("Zurich"), the Dodge Durango insurer, GoAuto Insurance Company ("GoAuto"), and Truck Driver C in connection with the accident involving the Durango. The allegations in these lawsuits were false in that they did not contain information about how Labeaud intentionally caused these collisions.

### The June 6, 2017 Staged Accident (Chevrolet Avalanche)

The Government would introduce testimony that, after May 17, 2017, **F. RANDLE** asked Smith if he knew anyone else who was interested in being involved in a staged automobile accident, and Smith recruited Lucinda Thomas ("Thomas"). Thomas secured Judy Williams ("Williams"), Mary Wade ("Wade"), and Dashontae Young ("Young") as passengers. The Government would introduce evidence that, on June 5, 2017 at approximately 12:11 P.M., **F. RANDLE** texted, Keating, "Pills will be good tomorrow." The Government would introduce phone records showing that the co-conspirators exchanged numerous calls and texts with one another on June 5 and 6, 2017. The Government would introduce testimony that, during these calls, Smith obtained instructions from **F. RANDLE** and S. Wheaten, and then directed Thomas to drive her 2009 Chevrolet Avalanche ("Avalanche") from Houma to a Burger King parking lot in New Orleans. Text messages would show that, at approximately 8:34 A.M. on June 5, 2017, S. Wheaten texted Labeaud, "Birthday [Burgundy] Avalanche at Burger King." Labeaud and Solomon then arrived at Burger King, and Labeaud got into the driver's seat of the Avalanche.

Evidence would show that, at approximately 12:30 P.M., Labeaud intentionally collided the Avalanche with a 2017 Freightliner tractor-trailer owned by Southern Refrigerated Transport, Inc. that was merging onto Chef Menteur Highway. Thomas falsely reported that she had been driving at the time of the collision and that the tractor-trailer was at fault. After the collision, Williams, Wade, and Young hired Keating to file a false lawsuit. The Government would introduce bank records and testimony that, on or about June 6, 2017, Keating wrote a check for approximately $7,500.00 to Labeaud. Documentary evidence would show that Keating filed personal injury lawsuits seeking monetary damages on behalf of Williams, Wade, and Young against and Southern Refrigerated Transport, Inc. and its insurer, IQS Insurance Risk Retention Group, Inc., in March 2018 and June 2018. The allegations in these lawsuits were false in that they did not contain information about how Labeaud intentionally caused the June 6, 2017 accident.

At trial, the Government would present evidence that **F. RANDLE** and her co-conspirators caused mailing in furtherance of their fraudulent scheme to file false claims for damages based on staged collisions, including the following:

- On or about December 19, 2017, counsel for Covenant Transportation Group mailed an envelope via FedEx to Keating, **** Holiday Drive, New Orleans, LA 70114, containing settlement documents and a check in the approximate amount of $20,000.00 to settle Young's false claims.

- The Government would introduce documents showing that, on or about January 17, 2019, Counsel for Stevie B's Trucking, NUFIC, and Truck Driver B mailed an envelope via the United States Postal Service ("USPS") to the law firm of Attorneys A, B, C, and D, **** Canal Street, New Orleans, LA 70119, containing a check in the amount of approximately $5,000.00 to settle D. Diggs's false lawsuit.

### Falling out between F. RANDLE and Keating

After participating in the aforementioned scheme, **F. RANDLE** and Keating then had a falling out over money. The Government would introduce a text conversation in which **F. RANDLE** said to Keating, "I told you how too get money and how the [law firm of Attorneys A,

5

B, C, and D] was getting there money illeage you join in don't play no game with me give me my f****** check asap."

## Conclusion

In sum, the Government's evidence would prove the defendant, **F. RANDLE**, conspired to commit mail fraud by causing mailings in furtherance of lawsuits which sought monetary damages premised on falsehoods in connection with the May 17, 2017 and June 6, 2017 staged automobile collisions. The Government would present evidence that, through this scheme, **F. RANDLE** caused a loss of approximately $54,000.00

## Limited Nature of Factual Basis

The above facts come from an investigation conducted by, and would be proven at trial by, credible testimony from, *inter alia*, Special Agents and forensic examiners from the Federal Bureau of Investigation ("FBI") and other witnesses and from admissible tangible exhibits in the custody of the FBI, including phone records, text messages, police reports, medical records, body camera footage, bank records, deposition transcripts, and civil filings.

This proffer of evidence is not intended to constitute a complete statement of all facts known by Wheaten, and/or the government. Rather, it is a minimum statement of facts intended to prove the necessary factual predicate for her guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for the plea of guilty to the charged offense.

READ AND APPROVED:

_____
FLORENCE RANDLE
Defendant

_____
FRANK G. DESALVO
Counsel for Defendant

_____
MARIA M. CARBONI
EDWARD RIVERA
BRIAN KLEBBA
Assistant United States Attorneys